NO. 07-03-0125-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 29, 2004

_____


IN THE MATTER OF THE MARRIAGE OF
DALE LANIER WILSON AND BRIDGET COLLEEN WILSON
AND IN THE INTEREST OF LONDON ANTHONY ARCHER WILSON
AND AZZAN LUKE WILSON, MINOR CHILDREN

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 49,607-C; HONORABLE JOHN T. FORBIS, JUDGE

_____


Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**


Presenting three issues, Dale Lanier Wilson challenges the jury finding designating Bridget Colleen Wilson as joint managing conservator with the exclusive right to determine the domicile of the children of the marriage. By his first issue, Dale contends the jury finding awarding Bridget the exclusive right to determine the domicile of the children is against the great weight and preponderance of the evidence. By his second issue, he

contends the trial court abused its discretion in admitting evidence of his extramarital affairs while he was married to his first wife some four years before the birth of the children the subject of this suit and almost ten years from the date of trial, and by his third issue contends the trial court abused its discretion in allowing an expert to testify for Bridget even though the expert was not designated as an expert witness by her in response to his proper request for disclosure. We affirm.

Before his marriage in 1993 to Bridget, Dale had one son by his first marriage. During his marriage to Bridget, London was born in 1996 and Azzan was born in 1999. Dale filed his original petition for divorce on February 20, 2001, alleging no fault grounds and adultery. Among other things, Dale sought to be appointed temporary and permanent managing conservator of the children. Acting upon Bridget's motion for psychological examination, the trial court appointed Edwin Basham, EdD to interview, examine, and evaluate the parents and children and file a written report which he filed on June 24, 2002.

Following jury selection, testimony commenced on September 17, 2002, and the case was submitted to the jury on September 19. As material to the question of joint managing conservatorship of the children and which parent should have the exclusive right to determine the domicile of the children, the court's charge was crafted as suggested by

PJC 215.9A and question 2 of PJC 216.[1]  Among other instructions applicable to our review, the trial court instructed the jury as follows:

1.  The best interest of the children shall always be the primary consideration in determining questions of managing conservatorship and questions of possession of and access to the children.

2.  You shall appoint both parents Joint Managing Conservators unless you find that such an appointment is not in the best interest of the children.  In making this determination, you shall consider all of the following factors:[2]

3.  In determining which party to appoint Sole Managing Conservator, or to appoint Joint Managing Conservator, who will have the exclusive right to establish the residence of the children and with whom the children will primarily reside, you shall consider the qualification of each party without regard to the gender of the party or the children or the age of the children.

4.  In determining which party will establish the primary legal residence of the children, you shall consider the qualifications of each party without regard to the gender of the party or the children or the age of the children.

---

[1]References are to Comm. On Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges, (Family ed. 2002).

[2](1) whether the physical, psychological, or emotional needs and development of the children will benefit from the appointment of joint managing conservators; (2) the ability of the parents to give first priority to the welfare of the children and reach shared decisions in the children's best interest; (3) whether each parent can encourage and accept a positive relationship between the children and the other parent; (4) whether both parents participated in children-rearing before the filing of the suit; (5) the geographical proximity of the parents' residences; (6) not applicable because of age of children; and (7) any other relevant factor.

By their answers, the jury found (1) Dale and Bridget should be appointed joint managing conservators, (2) the children should primarily reside with Bridget, and (3) Bridget should be entitled to establish the primary legal residence of the children if limited to Randall County and contiguous counties.

By his first issue, Dale contends the evidence was factually insufficient to support the jury finding that Bridget should be awarded the exclusive right to determine the domicile of the children. We disagree.

Counsel for the parties recognize that the appropriate standard of review is set out in Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241-42 (Tex. 2001); Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); and Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986), and that Dale must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. Dale also has the burden to demonstrate why the evidence that does not support the ruling is deficient when compared to the other evidence of record. In re T.M., 33 S.W.3d 341, 349 (Tex.App.--Amarillo 2000, no pet.).

Dale suggests that the factor in determining conservatorship is set out in Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976), and section 153.002 of the Texas Family Code. However, the *Holley* factors were not submitted with the charge. Further, the jury was instructed they should "consider the qualifications of each party without regard to the gender of the party or the children or the age of the children" in answering the question of

4

the children's primary residence. Because neither party presented any objections to the charge or instructions, we will measure the evidence against the statement of law contained in the charge even if defective. Household Credit Services, Inc. v. Driscol, 989 S.W.2d 72, 88 (Tex.App.--El Paso 1998, pet. denied), citing Sage Street Associates v. Northdale Const. Co., 863 S.W.2d 438, 447 (Tex. 1993).

The jury finding that both parents should be appointed joint managing conservators necessarily implies a sub-finding that the appointment was in the best interest of the children. Dale limits his complaint to the jury finding that the children should primarily reside with Bridget and does not complain of her appointment as joint managing conservator. As applicable to this question, the court instructed the jury:

> Joint Managing Conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the children to each of the joint conservators; *ordinarily the best interest of the child will require the designation of a primary residence for the children.*

(Emphasis added). Accordingly, in our review of Dale's argument that the finding is against the great weight and preponderance, we must also review the evidence of the qualifications of each parent.

Dale's argument commences with the best interest of the children analysis in *Holley*. 544 S.W.2d at 371-72. However, because the *Holley* factors were not included in the charge to the jury, we do not test the evidence before the jury by the *Holley* criteria. By his analysis Dale then emphasizes isolated instances of Bridget's intoxication and association

5

with a male friend with a criminal record.  The evidence demonstrated that both parents had education beyond high school and held good jobs.  By his brief, Dale does not attempt to demonstrate why the evidence that does not support the finding is deficient when compared to the other evidence in the record.  *In re T.M.,* 33 S.W.3d at 349.  From our review of the record, it appears that Bridget has maintained a responsible teaching position during the marriage, managed employees and has missed minimum days at her job.  A former co-worker who had been terminated by Bridget, testified that Bridget was a good worker and mother.

Pursuant to the court order for psychological examination, Dr. Basham interviewed the parents and the children.[3]  Among other things, his written report indicated:

1.  neither parent has a history of serious mental or emotional problems, and

2.  the parents are cooperating with the temporary visitation schedule and appear to be able to communicate with each other regarding the important issues about the children.

Although the report noted Bridget admitted occasional lapses in judgment, it also indicated that she was an emotionally sensitive and caring mother.  The report further established that Dale is a highly involved and responsible father.

---

[3]Six hour interview with Dale and seven hour interview with Bridget.

Considering the instructions to the jury, Dale does not contend the jury finding appointing Bridget as joint managing conservator was error, and the absence of an explanation why the finding is deficient when compared to the other evidence in the record, we conclude that the jury answer to question two was not against the great weight and preponderance of the evidence. Issue one is overruled.

By his second issue, Dale contends the trial court erred in admitting evidence of his extramarital affairs while he was married to his former wife. We disagree. By his pleadings, Dale made Bridget's extramarital affair an issue. Also, when Dale called his former wife as a witness during his case-in-chief, he sought to establish by her testimony that he was a good father and tried to instill moral values in their son. Then, during cross-examination, Bridget's attorney asked Dale's former wife

> [w]as it not an immoral act on Dale's part that caused you some problems during your marriage?

After a conference out of the presence of the jury, the trial court overruled Dale's objection. Among other things, the trial court noted that Dale had opened the door and allowed questions which established that Dale also had an affair during his first marriage. Having placed his own conduct in issue by the testimony of his former wife, he waived any objection by inviting the alleged error of which he now complains. *See* General Chemical Corp. v. De La Lastra, 852 S.W.2d 916, 920 (Tex. 1993), *cert. dism'd*, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993).

7

Moreover, in Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998), the Court held that (1) evidentiary rulings are "committed to the trial court's sound discretion," (2) a trial court abuses its discretion when it rules "without regard for any guiding rules or principles," and (3) an appellate court must uphold the trial court's evidentiary ruling if there is any legitimate bases for the ruling. Considering that the best interest of the children was the court's "primary consideration in a suit affecting the parent-child relationship," *see* In re J.W., 113 S.W.3d 605, 612 (Tex.App.--Dallas 2003, pet. denied), and the major objective of this appeal and Dale's trial strategy to make morality an issue, we conclude the trial court did not abuse its discretion in admitting evidence of his extramarital affair. Issue two is overruled.

By his third issue, Dale contends the trial court abused its discretion is allowing Dr. Basham to testify when called by Bridget over his objection even though Dr. Basham was not designated as an expert witness by Bridget in response to Dale's proper request for disclosure. We disagree.

Dale does not contend the trial court erred in admitting the first amended order on motion for psychological examination or the four and one-half page written child custody evaluation of Dr. Basham,[4] but instead, limits his contention to the admission of Dr. Basham's testimony. Although Dale does acknowledge that the propriety of the admission of evidence is governed by an abuse of discretion standard, Gee v. Liberty Mut. Ins. Co.,

---

[4]Bridget's exhibits 2 and 3 respectively.

8

765 S.W.2d 394, 396 (Tex. 1989), he suggests that the application of Rule 193.6(a) of the Texas Rules of Civil Procedure is a case of first impression. In its current form, Rule 193.6(a) excludes evidence not timely identified unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.[5]

The expert's involvement was developed outside the presence of the jury. According to the evidence, on March 12, 2002, the trial court appointed the expert for a psychological examination of the parties and the order was approved by both counsel. Bridget's attorney requested the trial court take judicial notice of the file which contained the order appointing the expert and his report. Among other things, the order directed that a detailed written report of the evaluation by the expert be provided to all parties before March 30, 2002. Although Dale designated Dr. Basham as a person with knowledge and potential witness, Bridget did not list nor designate the expert on her supplemental designation. Out of the presence of the jury, Bridget's attorney argued that designation of the court ordered expert was unnecessary or that it was unnecessary because Dale had designated the expert. Further, he argued that because a copy of the report had been filed Dale was not surprised. At the conclusion of the hearing, the trial court expressly found (1) good cause was shown by the fact that Dale designated the expert; and (2) that the element of surprise

---

[5]A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record. *See* Rule 193.6(b).

was removed because Dale had designated the expert as a witness and the report was part of the record.

In Mares v. Ford Motor Co., 53 S.W.3d 416, 419 (Tex.App.--San Antonio 2001, no pet.), in considering a somewhat similar question regarding Rule 193.6, the court concluded that a discovery sanction is reviewed under an abuse of discretion standard and that the reviewing court must determine whether the trial court's action was arbitrary or unreasonable. Given that Dale had actual notice[6] of the expert's opinion and the written report several months before trial, had in fact designated the expert as a person with knowledge, and the expert was of the opinion that (1) neither parent shows any likelihood of being abusive or neglectful toward the children, and (2) both parents have a pattern of close involvement with the children and appear to have provided adequate care for the children, and (3) both children appear strongly attached to both parents, and considering that the best interest of the children was of utmost importance, we conclude that the trial court did not abuse its discretion in admitting Dr. Basham's testimony. Issue three is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

---

[6]For purposes of pretrial procedure, the rules make no distinction in actual or constructive notice. A. Copeland Enterprises, Inc. v. Tindall, 683 S.W.2d 596, 597 (Tex.App.--Fort Worth 1985, writ ref'd n.r.e).